**E. L. MOORE, Individually and as Next Friend of Deborah Moore, a minor, Appellants,**

v.

**Paul DRUMMET, d/b/a H & H Guest Ranch, Appellee.**

**No. 535.**

Court of Civil Appeals of Texas, Houston (14th Dist.).

March 15, 1972.

Kenneth W. Burch, Law Offices of D. L. McClure, Houston, for appellants.

Donald R. Hallmark, Boswell, O'Toole, Davis & Pickering, Houston, for appellee.

BARRON, Justice.

This is a suit for personal injuries to a minor plaintiff caused by her fall from a runaway horse owned by the defendant Paul Drummet. The jury found all pertinent issues in defendant's favor, and in particular found that the incident in which Deborah Moore sustained injury was the result of an unavoidable accident. Upon this verdict judgment was entered that plaintiffs take nothing, and from that judgment this appeal has been perfected.

Deborah Moore, along with a body of her classmates, attended a school outing held on appellee's guest ranch. While there Deborah and several others elected to go on a horseback ride conducted by personnel of the ranch. After paying a set fee each person was assigned a horse on the basis of his or her riding ability gleaned from cards filled out by each individual before the ride commenced. Soon after the ride began Deborah's horse assumed a position at the head of the group and determinedly remained in the lead despite Deborah's efforts to return to the middle of the group. On two occasions the wrangler who was supervising the ride moved from his place at the rear of the group to the fore to check Deborah's horse. On the third or fourth occasion, when the wrangler galloped up directly behind Deborah's horse, her horse suddenly

bolted and ran despite her attempt to hold it. With the wrangler in pursuit Deborah's horse ran in an arc which curved to the left until it collided with a barbed wire fence and fell, hurling Deborah to the ground. In the course of the impact and fall Deborah sustained a deep cut in her left ankle.

Special Issues were submitted inquiring as to (1) the suitability of Deborah's horse to her use, (2) negligence by the guest ranch in failing to provide a reasonably safe horse, (3) negligence in the wrangler's rapidly riding up behind Deborah's horse just before it bolted, and (4) negligence in the ranch's failing to provide adequate supervision for Deborah. To these issues the jury found Deborah's horse suitable and failed to find any negligence. To other special issues the jury found that Deborah, in the exercise of ordinary care, should have known and appreciated the dangers usually incident to horseback riding. It failed to find that she did not know and appreciate the danger of riding on the occasion in question; failed to find that she did not follow the instructions given to her by the ride supervisor, and failed to find that she was negligent in her control of her horse. The jury's conclusion was that the incident in which Deborah was injured resulted from an unavoidable accident. "None" responses were given in reply to special issues regarding damages.

Appellants have submitted 14 points of error which challenge the unavoidable accident finding, the failure to find negligence and proximate cause issues in their favor, the exclusion of certain proffered evidence and the answers of "none" to special issues regarding damages.

Points of error 1 through 3 charge that the finding of unavoidable accident is supported by legally or factually insufficient evidence, or is against the great weight and preponderance of the evidence. The record contains evidence to show that Deborah's horse displayed no unsuitable characteristics when it was assigned to her and when the ride began; that the horse was 16 to 18 years old and had been ridden without incident over 20 times that same week; that the horse had never given any indication of being a particularly spirited mount; and that it was still in use at the guest ranch at the time of trial. Appellee testified that Deborah's horse was a "wagon horse" and not a "race horse", and thus would not have a known tendency to run if approached rapidly from the rear by a second horse. Appellee also revealed that no "wagon horse" will jump a fence and, unless forced by its rider, cannot be steered into a fence. Appellee said he had never experienced any problem with the horse and, in his opinion, it was a suitable mount for an inexperienced 15-year-old girl. We think this evidence is both legally and factually sufficient support for the jury's finding. There is no preponderance of evidence to the contrary. At most the record contains *some* evidence only that on this occasion Deborah's horse did bolt in response to the approach of another horse. That is entirely consistent with the finding of unavoidable accident if the wrangler's actions did not constitute negligence.

Appellants' fourth and fifth points allege that the failure to find the wrangler's conduct negligent and a proximate cause cuts against the preponderance of the evidence. We do not agree. Appellee testified that Deborah's horse was a "wagon horse" and would not reasonably be expected to bolt when approached from the rear. The wrangler supervising the ride remained in the rear of the group, from which point alone he could observe all the riders. Each rider had been instructed not to run his or her horse. It was the wrangler's responsibility to protect both horse and rider and to stop any horse attempting to go too fast. As appellee testified,

"If they (wranglers) have to catch up with the horse they have to get to the

front. If the rider is doing something that he is not supposed to do, they have to get up there to stop them." (parenthesis added)

We think that the bulk of the evidence demonstrates that the wrangler was carrying out his duties in a reasonable fashion. While there is circumstantial evidence that his actions may have in fact caused Deborah's horse to bolt, the preponderance of evidence does not show those acts to have been negligent. Nor, from the evidence recounted above, was the horse's reaction satisfactorily foreseeable for the wrangler's conduct to have *proximately* caused the horse to bolt.

■ We further find, in reply to points 6 through 8, that the jury's failure to find inadequate and negligent supervision which proximately caused appellant's injuries was not contrary to the preponderance of the evidence. Appellee's chief contention is that, once appellant's horse had manifested a disposition calling for special attention, the wrangler should have done more than he did to check the horse. However, there is nothing in the record to suggest that a horse's apparent desire to maintain a lead at the head of a trail ride represents any unusual risk requiring unusual precautions by the supervisor of the ride.

■ Appellants' 9th and 10th points complain of the exclusion as hearsay of statements overheard by Deborah Moore just prior to the ride and shortly after the accident. Both statements are by employees of appellee and tend to prove that the horse assigned to Deborah was unsuitable for her. Appellants contend that both are admissible as admissions by persons vested by appellee with authority or as res gestae of the event. For a spontaneous statement to be admissible as a hearsay exception it must have been made spontaneously in reaction to a startling event or as a present-sense impression. See, e. g., 1 McCormick & Ray, Texas Evidence secs.

915, 916 (2d ed. 1956). Declarations by an agent are admissible against his principal if they accompany an authorized act or are closely enough connected with an authorized act to be considered a part of the res gestae. 2 McCormick & Ray, Texas Evidence sec. 1164 (2d ed. 1956).

■ The first statement was in actuality an interrelated pair of statements— a purported response by the wrangler to a purported comment made by a purported female employee. Appellee unequivocally testified that he had no female employees. Even if we assume that the alleged female speaker was present and functioning as an employee, there still is no showing that she was authorized to make the statement that she made. As appellants note, her purported statement accompanied the assignment of horses. There is no showing that she was authorized to assign horses and hence her declaration did not accompany an act she was authorized to perform. It can not then be an admission or a part of an admission binding on appellee. Her statement was offered without the limitation that it was to serve only as a predicate to give meaning to the wrangler's response. Rather, it, like the wrangler's words, was offered for the truth of its contents and therefore it is pure hearsay.

■ Inasmuch as no startling event or present-sense impression is concerned the dual statements can not have been a spontaneous exclamation. Nor can they be considered part of the res gestae. They are not part of the operative facts of the establishing of a business relationship between the guest ranch and Deborah Moore or any act of negligence committed by the ranch or its agent. The alleged female employee's statement hence was properly excluded and, because of it and the wrangler's response were submitted as a single entity, the entire conversation was properly excluded. In any event, the existence of any female employee is disputed and without her alleged statement the wrangler's al-

leged response is meaningless. Thus, even if these statements should contain an admission within the wrangler agent's authority, they are sufficiently lacking in credibility so that their exclusion, if it was error, was not reversible error. Tex.R. Civ.P. 434.

The second statement excluded by the trial court was a declaration by the wrangler who conducted the trail ride, made to one of the persons chaperoning the trip to the guest ranch. The statement was uttered, by Deborah's own estimate, some 30 to 35 minutes after her collision with the fence. We think that expanse of time in conjunction with the declarant's removal from the scene to secure the chaperon's assistance removed the element of spontaneity and allowed ample time for reflection and return to calm. Such a lapse of time also conclusively eliminated any possibility that the statement was a verbalizing of a present-sense impression. And, for the same reasons as with the 1st hearsay statement, the statement can not be a part of the res gestae. Nor is the statement an admission within the reach of the wrangler's authority. His remarks to the effect that ". . . he didn't think I should have had that horse, it was too head-strong . . .", were but a conclusion and not a recitation of fact. See Sears, Roebuck & Co. v. Hough, 421 S.W.2d 714 (Tex.Civ.App.—Houston (14th Dist.) 1967, no writ); Deaton & Son v. Miller Well Servicing Co., 231 S.W.2d 944 (Tex. Civ.App.-Amarillo 1950, no writ).

As appellant concedes, the jury's refusal to award damages is immaterial unless error has earlier been found in the jury's refusal to find issues sufficient to sustain a judgment for appellant. Southern Pine Lumber Co. v. Andrade, 132 Tex. 372, 124 S.W.2d 334 (Tex.Com.App.1939, opinion adopted). As a consequence of our refusal to overturn any of the jury's findings challenged, appellants' last four points of error are overruled.

The judgment of the trial court is affirmed.