NUMBER 13-05-535-CV



COURT OF APPEALS



THIRTEENTH DISTRICT OF TEXAS



CORPUS CHRISTI - EDINBURG






ALLSTATE LLOYDS COMPANY, Appellant,


v.



MARVIN LUMBER AND CEDAR COMPANY, Appellee.





On appeal from the 94th District Court


of Nueces County, Texas.






MEMORANDUM OPINION


 

Before Justices Hinojosa, Rodriguez, and Garza


Memorandum Opinion by Justice Rodriguez


 This is an appeal involving a subrogation action. By two issues, appellant,
Allstate Lloyds Company (Allstate), contends that the trial court erred in granting a no-evidence summary judgment in favor of appellee, Marvin Lumber and Cedar Company
(Marvin Lumber). (1) We affirm in part, and reverse and remand in part.

I. Background

 Allstate sued Marvin Lumber for negligence and strict products liability for
insurance payments paid under a policy of insurance arising out of property damage
to the home of an insured. (2) Allstate asserted that the windows manufactured by
Marvin Lumber allowed water to intrude into the home causing damage. Marvin
Lumber filed a no-evidence motion for summary judgment, to which Allstate filed an
amended response supported by seven exhibits. Marvin Lumber replied and objected
to five of the exhibits. Without expressly ruling on Marvin Lumber's objections and
without specifying the grounds upon which it was granted, the trial court granted
summary judgment in favor of Marvin Lumber and entered a final judgment. This
appeal ensued.

II. Standard of Review

 Under Texas Rule of Civil Procedure 166a(i), a defendant may move for
summary judgment on the ground that there is no evidence of at least one element of
the plaintiff's claims. Tex. R. Civ. P. 166a(i). The plaintiff then has the burden to
produce competent summary judgment evidence sufficient to raise a genuine issue of
material fact on the challenged element or elements. See id.; Forbes, Inc. v. Granada
Biosciences, Inc., 124 S.W.3d 167, 172 (Tex. 2003). If the plaintiff fails to satisfy
its burden, the trial court must render summary judgment in favor of the defendant. 
Tex. R. Civ. P. 166a(i); King Ranch, Inc. v. Chapman, 118 S.W.3d 742, 751 (Tex.
2003).

 In reviewing a no-evidence summary judgment, we apply the same legal
sufficiency standard that is applied in reviewing directed verdicts. King Ranch, 118
S.W.3d at 750-51; Zapata v. Children's Clinic, 997 S.W.2d 745, 747 (Tex.
App.-Corpus Christi 1999, pet. denied). "A no evidence point will be sustained when
(a) there is a complete absence of evidence of a vital fact, (b) the court is barred by
rules of law or of evidence from giving weight to the only evidence offered to prove
a vital fact, (c) the evidence offered to prove a vital fact is no more than a mere
scintilla, or (d) the evidence conclusively establishes the opposite of the vital fact." 
King Ranch, 118 S.W.3d at 751 (quoting Merrell Dow Pharms., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997)). Thus, the summary judgment must be affirmed,
unless the record, viewed in the light most favorable to the nonmovant, demonstrates
more than a scintilla of evidence supporting the challenged element or elements of the
plaintiff's claim. Id.; see Tex. R. Civ. P. 166a(i). Less than a scintilla of evidence
exists when the evidence is "so weak as to do no more than create a mere surmise or
suspicion" of a fact. King Ranch, 118 S.W.3d at 751. More than a scintilla of
evidence exists when the evidence "rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions." Id. (quoting Merrell Dow Pharms.,
953 S.W.2d at 711). 

 When the trial court's order granting summary judgment does not specify the
grounds upon which it was granted, the judgment must be affirmed if any of the
grounds advanced in the summary judgment motion are meritorious. FM Props.
Operating Co. v. City of Austin, 22 S.W.3d 868, 873 (Tex. 2000).

II. Negligence

 By its first issue, Allstate contends that the trial court erred in granting summary
judgment in favor of Marvin Lumber because (1) Allstate offered more than a scintilla
of evidence as to Marvin Lumber's negligence and (2) the doctrine of res ipsa loquitur
should apply to infer negligence on the part of Marvin Lumber. Allstate further asserts
Marvin Lumber waived its objections to exhibits E and F because the trial court did not
explicitly rule on the objections. (3) Marvin Lumber contends that the record in this case
indicates that the trial court implicitly sustained its objections. We must, therefore,
first examine the record to determine whether the trial court implicitly ruled on Marvin
Lumber's objections.

A. Implicit Rulings

 The granting of a no-evidence summary judgment does not implicitly sustain
objections to summary judgment evidence where there is no ruling or order. See Jones
v. Ray Ins. Agency, 59 S.W.3d 739, 752 (Tex. App.-Corpus Christi 2001), pet.
denied, 92 S.W.3d 530 (Tex. 2002) (per curiam). A failure to obtain a ruling on
objections to summary judgment evidence waives the issue unless the record reflects
an implicit ruling by the trial court. See Mowbray v. Avery, 76 S.W.3d 663, 689 (Tex.
App.-Corpus Christi 2002, pet. denied); see also Tex. R. App. P. 33.1(a) (providing
that to present a complaint for appellate review, the record must show that the trial
court either expressly or implicitly ruled on a timely request, objection or motion). For
there to be an implicit ruling on a party's objection to summary judgment evidence,
some indication must appear in the record or in the summary judgment itself, other
than the mere granting of the summary judgment, that the trial court ruled on the
objection. See In re Estate of Schiwetz, 102 S.W.3d 355, 360 (Tex. App.-Corpus
Christi 2003, pet. denied); Jones, 59 S.W.3d at 752-53; Columbia Rio Grande Reg'l
Hosp. v. Stover, 17 S.W.3d 387, 395 (Tex. App.-Corpus Christi 2000, no pet.)
(adopting the reasoning of Frazier v. Yu, 987 S.W.2d 607 (Tex. App.-Fort Worth
1999, pet. denied), and holding that an implied ruling on the objections to summary
judgment evidence was shown by the record). Marvin Lumber bore the burden of
obtaining a ruling on its objections. See Jones, 59 S.W.3d at 753.

 Marvin Lumber cites to Mowbray and SSP Partners v. Gladstrong Inv. (USA)
Corp., 169 S.W.3d 27, 34 (Tex. App.-Corpus Christi 2005, pet. filed), to support its
contention that the trial court impliedly ruled on its objections. In Mowbray, we
concluded that the trial court impliedly ruled on Mowbray's objections when its
judgment set out the following: "Upon consideration of the Motion, the Response, and
the evidence and public records on file, the Court is of the opinion to take judicial
notice of and consider the records as Defendants request. . . ." Mowbray, 76 S.W.3d
at 689. A review of the record in Gladstrong revealed no order on the objections, and
we noted that "[w]hile the final judgment . . . included a 'Mother Hubbard' clause, the
presence or absence of a 'Mother Hubbard' clause in a summary judgment is of no
import to show the trial court implicitly ruled on objections." Gladstrong, 169 S.W.3d
at 34. In Gladstrong we, thus, determined the trial court did not impliedly rule on
objections and, thus, no error was preserved. Id.

 In the present case, Marvin Lumber objected to Allstate's exhibits E and F. (4) The
order provides only that, "after considering all pertinent pleadings and hearing
argument of counsel, [the trial court] announced its decision finding in favor of
Defendant, Marvin Lumber and Cedar Co." While the trial court then rendered
judgment in response to Marvin Lumber's motion to enter final judgment, there is no
written order sustaining Marvin Lumber's objections and there is nothing in the record
indicating that the trial court sustained Marvin Lumber's objections. Moreover, had the
trial court impliedly sustained Marvin Lumber's objections to exhibits E and F, Allstate
presented additional evidence, exhibits D and G, to establish the elements of its
claims. While it is plausible to conclude that the trial court might have chosen to strike
exhibits E and F, it is equally plausible that the trial court simply concluded that
Allstate had presented no more than a scintilla of evidence to establish its claims. 
Regardless of the merits of that conclusion, there is nothing in the record, short of an
inference or a surmise, which supports the conclusion that the trial court implicitly
sustained or implicitly overruled Marvin Lumber's objections to exhibits E and F.

B. Competent Evidence

 We next address Marvin Lumber's alternative assertion that exhibits E and F do
not constitute competent summary judgment proof because they were neither verified
nor accompanied by an affidavit. See Moron v. Heredia, 133 S.W.3d 668, 671 (Tex.
App.-Corpus Christi 2003, no pet.). Because the complete absence of authentication
is a defect of substance that can be urged for the first time on appeal, Blanche v. First
Nationwide Mortgage Corp., 74 S.W.3d 444, 451 (Tex. App.-Dallas 2002, no pet.)
(citing Kotzur v. Kelly, 791 S.W.2d 254, 257 (Tex. App.-Corpus Christi 1990, no
writ)), and because exhibits E and F were not verified or accompanied by affidavit, we
conclude that they could not have been considered by the trial court, and we will not
consider them in our review on appeal.

 We turn now to the merits of Allstate's first issue.C. No-Evidence Challenge to Breach of Duty and Proximate Cause Elements

 The elements of a cause of action for negligence are (1) the defendant owed a
legal duty to the plaintiff, (2) the defendant breached the duty, and (3) the breach
proximately caused the plaintiff's injury. Western Inv., Inc. v. Urena, 162 S.W.3d
547, 550 (Tex. 2005). In its no-evidence summary judgment, Marvin Lumber asserted
that Allstate had no evidence that Marvin Lumber "breached a duty of ordinary care
in designing, manufacturing, marketing or distributing the windows at issue in this
case," or that "any breach of the duty of ordinary care proximately caused an injury."

 Allstate asserts that the deposition testimony of Mark O'Connell, attached as
exhibit D to its amended response, provides more than a scintilla of evidence that there
was negligence. O'Connell, a project manager at the Rimkus Consulting Group, Inc., 
a business retained by Allstate to determine the cause of the damage in this case,
testified that, in his general opinion, the windows were water damaged, and that "[i]t
appeared that the window damage was consistent with frame leaks and the security
sensor leaks." O'Connell further testified as follows: "Well, I can have an opinion on
the water damage I did see on the windows being consistent with the window frame
leaking as opposed to a sealant, that sort of opinion." When asked for an opinion on
what caused water damage on each window, O'Connell testified that the damage
appeared to be caused by frame leaks. (5) He also testified that he did not believe that
the security system or security contact caused any of the water damage and that,
although it is a possibility that the leaks might be caused by the general contractor or
installer, from what he saw, he believed that it was the gasket failure or deterioration
on the first floor windows. 

 Allstate argues that this testimony is evidence from which a reasonable finder
of fact could conclude both that Marvin Lumber was negligent when it designed,
manufactured, inspected, and/or tested these particular windows, and that the
negligence was the proximate cause of damage to the windows. We conclude,
however, that this testimony, when viewed in the light most favorable to Allstate, is
no more than a mere scintilla of evidence to support the breach and the causation
elements of Allstate's negligence claim. See King Ranch, 118 S.W.3d at 751. It does
no more than create a mere surmise or suspicion of fact, see id., and we find no other
evidence that supports breach and proximate cause. See Urena, 162 S.W.3d at 550.

 Moreover, O'Connell also testified as follows:


 Q: Do you have an opinion as to whether or not Marvin Lumber and
Cedar Company or Marvin Windows and Doors was negligent in
this case, if their conduct in any manner was negligent?


 A: I don't think they sold them bad windows on purpose if that's
what you mean.

 

 Q: All right, well negligence I think may be defined as a failure to use
ordinary care or doing that which a person of reasonable prudence
or ordinary prudence would not have done or failing to do that
which a person with ordinary prudence - reasonable prudence
would have done.

 

 With that type of definition in mind, do you have an opinion as to
whether or not Marvin was negligent in its conduct with regard to
these windows?

 

 A: I don't. I don't think they were negligent, no. I just think there
was a defect in the windows.


 Based on the above testimony, we further conclude that the evidence
conclusively establishes the opposite of the vital fact; it establishes that no breach of
duty occurred. (6) See King Ranch, 118 S.W.3d at 751; see also Urena, 162 S.W.3d at
550.

D. Res Ipsa Loquitur

 Allstate also contends that the circumstances are such that it may rely on the
doctrine of res ipsa loquitur to establish its case. "The doctrine of res ipsa loquitur is
not a separate cause of action, but rather a rule of evidence by which negligence may
be inferred by the jury." Trejo v. Laredo Nat'l Bank, 185 S.W.3d 43, 47 (Tex.
App.-San Antonio 2005, no pet.) (citing Haddock v. Arnspiger, 793 S.W.2d 948, 950
(Tex. 1990)). To be entitled to rely on res ipsa loquitur, Allstate must show both (1)
the character of the accident is such that it would not ordinarily occur in the absence
of negligence, and (2) that the instrumentality causing the injury was under the
management and control of the defendant. Haddock, 793 S.W.2d at 950; Lambert
v. Gearhart-Owen Indus., Inc., 626 S.W.2d 845, 847 (Tex. App.-Corpus Christi
1981, no writ). Marvin Lumber contends that Allstate did not properly plead res ipsa
loquitur. We need not address this assertion, however, because even assuming that
res ipsa loquitur was before the trial court, Allstate has not shown the second factor
of such a claim: control of the instrumentality causing the injury.

 Control, as it applies to res ipsa loquitur, does not mean exclusive control or
even control at the time of the accident. Mobil Chemical Co. v. Bell, 517 S.W.2d 245,
251 (Tex. 1974). Texas requires, however, that the plaintiff "so reduce" the likelihood
of other causes that "the jury can reasonably find by a preponderance of the evidence
that the negligence, if any, lies at the defendant's door." Trejo, 185 S.W.3d at 48
(citing Mobil Chemical, 517 S.W.2d at 251). In general, the doctrine will not apply if
the evidence shows that the product in question has been "meddled with," interfered
with, tampered, or modified. Trejo, 185 S.W.3d at 48; see Parsons v. Ford Motor Co.,
85 S.W.3d 323, 333 (Tex. App.-Austin 2002, pet. denied).

 The windows in this case were transported into the state and installed by a third
party. The Safeguard System, Inc., drilled holes into the window jams and placed
sensors in and around the window areas. The windows were installed in a home
occupied and maintained by the homeowner for six years before the damage to the
interior of the home was discovered. The involvement of the contractor, installer, and
the security company, in addition to the use of the home by the homeowner for over
six years before the discovery of the water intrusion, establish that Marvin Lumber did
not exercise the control necessary for res ipsa loquitur to apply. Allstate relies on the
testimony of Harry J. Armenia, a fourteen-year employee of Marvin Lumber, who
testified that the windows were sealed at the factory and arrived unaltered at the
construction site. However, this evidence is no more than a scintilla of evidence that
the windows that allegedly caused the injury were under the management and control
of Marvin Lumber. Thus, we cannot conclude that Allstate may rely on the doctrine
of res ipsa loquitur to establish its negligence claim.

 Allstate's first issue is overruled.

III. Strict Liability

 By its second issue, Allstate contends that the trial court erred in determining
that its summary judgment proof did not constitute more than a scintilla of evidence
of Marvin Lumber's liability under strict liability.

A. The Law

 Texas has adopted section 402(a) of the Restatement (Second) of Torts with
respect to claims for strict products liability. Firestone Steel Prods. Co. v. Barajas,
927 S.W.2d 608, 613 (Tex. 1996) (citing Restatement (Second) of Torts § 402A
(1965); Lubbock Mfg. Co. v. Sames, 598 S.W.2d 234, 236 (Tex. 1980); Armstrong
Rubber Co. v. Urquidez, 570 S.W.2d 374, 375-76 (Tex. 1978)). Section 402A
provides the following:

(1) one who sells any product in a defective condition
unreasonably dangerous to the user or consumer or to his
property is subject to liability for physical harm thereby
caused to the ultimate user or consumer, or to his property
if:


(a) the seller is engaged in the business of selling such a
product, and


(b) it is expected to and does reach the user or consumer
without substantial change in the condition in which it is
sold.


Restatement (Second) of Torts § 402A (1965). Under Texas law, strict liability can
be predicated on one of three different theories: (1) manufacturing defects; (2) design
defects; or (3) marketing defects, also referred to as a warning defect. Keene Corp.
v. Gardner, 837 S.W.2d 224, 228 (Tex. App.-Dallas 1992, writ denied); see Lucas
v. Tex. Indus., Inc., 696 S.W.2d 372, 377 (Tex. 1985) (op. on reh'g); Borg-Warner
Corp. v. Flores, 153 S.W.3d 209, 220 (Tex. App.-Corpus Christi 2004, no pet.).

B. Analysis

 Allstate pleaded two theories of strict liability. It claimed that the windows
were not suitable for their ordinary and intended use in that they failed to make a
proper seal or otherwise leaked moisture into the home. They were unreasonably
dangerous and defective in that they leaked water into the residence and were not
usable for their ordinary and intended purpose. These allegations involve design and
manufacturing defect claims. Marvin Lumber, in its no-evidence motion for summary
judgment, asserted that there was no evidence of a design or manufacturing defect
with any of its windows. (7)

1. Design Defect

 By statute in Texas, in order to recover under a design defect theory, a plaintiff
must prove by a preponderance of the evidence that there is a safer alternative design. 
See Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a) (Vernon 2005); De Hernandez v.
New Tex. Auto Auction Servs., L.P., 193 S.W.3d 220, 224-25 (Tex. App.-Corpus
Christi 2006, no pet.). Marvin Lumber's motion asserted that Allstate failed to offer
evidence of an alternative design to satisfy the requirements of section 82.005(a). 
See Tex. Civ. Prac. & Rem. Code Ann. § 82.005(a) (Vernon 2005). We agree. 
Allstate offered no evidence of such an alternative design; thus, there is a complete
absence of evidence of this vital fact. See King Ranch, 118 S.W.3d at 751.

 Allstate also asserts that res ipsa loquitur applies to this design defect claim,
and that an alternative design to a window that leaks would be essentially any window
that does not leak. Res ipsa loquitur can be applied to a strict liability claim, with the
same elements requiring satisfaction as if it were applied to a negligence claim. 
Parsons, 85 S.W.3d at 331-32. As set out above, Allstate has provided no proof, or
evidence by a preponderance, that Marvin Lumber had management and control of the
windows at issue in this case, or even that the windows had not been "meddled
with," interfered with, tampered, or modified, see Trejo, 185 S.W.3d at 48, by the
installer or by the security company. See, e.g., Ford Motor Co. v. Ridgeway, 135
S.W.3d 598, 601 (Tex. 2004) (setting out that, with respect to inferences of control
only, the product must be new or otherwise unmodified); Parsons, 85 S.W.3d at 332-33 (holding that to be entitled to a res ipsa loquitor presumption, the plaintiff must
establish that the product was unaltered since the time it left the manufacturer's
control at the initial sale); Doyle Wilson Homebuilder, Inc. v. Pickens, 996 S.W.2d
387, 397 (Tex. App.-Austin 1999, pet. dism'd by agr.). Therefore, we may not apply
the res ipsa loquitur doctrine to Allstate's strict liability design defect claims. See
Parsons, 85 S.W.3d at 333.

 As to Allstate's design defect strict liability claim, we overrule its second issue.

2. Manufacturing Defect

 Marvin Lumber's motion for summary judgment also asserted that Allstate had
no more than a scintilla of evidence supporting its claim of a manufacturing defect. 
Marvin Lumber further asserted in its motion that Allstate had no evidence that the
windows at issue were not substantially changed from their original condition. 
However, Marvin Lumber did not contend in its motion that the alleged defect rendered
the windows unreasonably dangerous. See Goodyear Tire & Rubber Co. v. Rios, 143
S.W.3d 107, 111 (Tex. App.-San Antonio 2004, pet. denied) (quoting Am. Tobacco
Co. v. Grinnell, 951 S.W.2d 420, 434 (Tex. 1997) (holding that under Texas law, a
manufacturing defect occurs "when a finished product deviates, in terms of its
construction or quality, from the specifications or planned output in a manner that
renders it unreasonably dangerous")). 

 Strict liability does not require a specific showing of how a product became
defective. Sipes v. Gen. Motors Corp., 946 S.W.2d 143, 155 (Tex. App.-Texarkana
1997, writ denied). Thus, a plaintiff need not identify a specific engineering or
structural cause of the defect. Parsons, 85 S.W.3d at 330. However, the plaintiff
must trace the defect to the manufacturer. Id. Expert testimony is not necessarily
required to establish a manufacturing defect. See Sipes, 946 S.W.2d at 155. Nor is
direct evidence required to establish the existence of a defect, which often can be
proven only by circumstantial evidence. See Ford Motor Co. v. Gonzalez, 9 S.W.3d
195, 199 (Tex. App.-San Antonio 1999, no pet.); Sipes, 946 S.W.2d at 155.

 O'Connell's testimony provided more than a scintilla of evidence that a strict
liability manufacturing defect claim exists. (8) While O'Connell could not give a reason
for what caused the "frame defects" that may have caused the leaks, a claim for strict
liability only requires that a defect be shown, and that circumstantial evidence points
back to the manufacturer. See Gonzalez, 9 S.W.3d at 199; Parsons, 85 S.W.3d at
330. O'Connell testified that the damage appeared to be caused by frame leaks,
possibly from the gasket failure or deterioration on some of the windows. In addition,
Armenia, Marvin Lumber's employee, provided the following deposition testimony that
was attached as exhibit G to Allstate's response:

 Q: Okay. And so [the windows] are basically sealed at the factory?


 A: That's correct.


 Q: Okay. and do you do any alterations to these windows when they
get to your -


 A: Not normally, no.


 Q: Okay, So, basically, they're in the same condition from the time
that they are shipped from Marvin Windows until they get to the
site of the construction?


 A: That's correct.


 The testimony of O'Connell regarding defects in the window frames, combined
with Armenia's testimony, establishes that Marvin Lumber manufactured the windows
and frames, they were shipped to the home, and there a defect was shown. We
conclude that Allstate has provided more than a scintilla of evidence, evidence that
"rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions," regarding Allstate's manufacturing defect claim. See King Ranch, 118
S.W.3d at 751. Therefore, the trial court erred when it granted Marvin Lumber's no-evidence motion for summary judgment on Allstate's strict liability manufacturing
defect claim. We sustain Allstate's second issue as to the strict liability manufacturing
defect claim.

IV. Conclusion

 The judgment of the trial court is affirmed in part and reversed and remanded
in part for proceedings consistent with this opinion.


 NELDA V. RODRIGUEZ

 Justice


Memorandum Opinion delivered and

filed this 31st day of August, 2006.
1. Greg Kiesel, Raymond Kiesel, Kiesel Construction Company, Inc., The Safeguard System, Inc.,
and Marvin Lumber and Cedar Company, misnamed as Marvin Windows and Doors, were named as
defendants below. Only Marvin Lumber and Cedar Company is identified as an appellee in this appeal.
2. Allstate also claimed breach of warranty. That claim, however, was withdrawn and a take
nothing judgment entered.
3. Exhibit E is a report issued by Rimkus Consulting Group to Allstate discussing the alleged
damage. Exhibit F is a copy of an Indoor Air Quality Inspection Report.
4. Marvin Lumber also objected to exhibits A, B, and C. On appeal, the parties argue this issue
only as to exhibits E and F. However, our analysis and conclusion regarding Marvin Lumber's objections
also apply to exhibits A, B, and C.
5. As to one identified window, O'Connell testified that the cause of the water damage was "[a]
frame leak or glazing."
6. Allstate also contends, without citing authority or citing to the record, see Tex. R. App. P.
38.1(h), that because Marvin Lumber did not challenge "certain causes of action," the trial court erred
in granting a final summary judgment. The "causes of action" about which Allstate complains are
negligent inspection and negligent testing of the design or the individual unit. These are alleged
negligent acts, not additional causes of action. 


Under rule 166a(i), "a party . . . may move for summary judgment on the ground that there is no
evidence of one or more essential elements of a claim . . . . The motion must state the elements as to
which there is no evidence." Tex. R. Civ. P. 166a(i). Marvin Lumber moved for summary judgment on
the grounds that Allstate has no evidence that it breached a duty of ordinary care in designing,
manufacturing, marketing or distributing the windows, and that Allstate has no evidence that the breach
proximately caused injury to the homeowner. Through this language, Marvin Lumber challenged the
breach and proximate cause elements of Allstate's negligence cause of action, satisfying rule 166a(i). 
Thus, this contention fails.
7. Marvin Lumber also asserts that Allstate had no evidence of a marketing defect; however,
Allstate did not bring its strict liability claim under that theory. The trial court's judgment found in favor
of Marvin Lumber and ordered that Allstate "take nothing by way of its negligence and strict product
liability claims." Based on our review of the record, we need not address the marketing or warning
defect theory of strict liability. See Tex. R. App. 47.1.
8. O'Connell provided the following deposition testimony that was attached as exhibit D to
Allstate's response:


 Q: Do you have any opinions as to whether or not the Marvin Windows in this case
were defective in any manner?

 

 A: My opinion is the frames did leak somehow.

 

 Q: What was the defect in design, if any in the Marvin Windows when they left the
factory?

 

 A: I don't have a specific cause.

 

 Q: What was the defect in manufacturing, if any, when these windows left the
marketing factory?

 

 A: I don't have a specific cause.

 

* * * * * 


 Q: When you say you don't have a specific cause, do you have a general cause of
or a general defect that you have, a generalized defect and design of these
windows when they left the factory?

 

 A: I can't exactly point to any, no.

 

 Q: Do you have any generalized defect of manufacturing regarding these windows
when they left the factory?

 

 A: No, sir.

 

* * * * * 

 A: I don't. I don't think they were negligent, no. I just think there was a defect
in the windows.